UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLORIA L. MORIZEN,

    Plaintiff,

vs.                                        CIVIL NO.:  04-CV-73676-DT

COMMISSIONER OF                 HON. ROBERT H. CLELAND
SOCIAL SECURITY,                   MAG. JUDGE WALLACE CAPEL, JR.

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is recommended that the Court deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment and enter judgment for Defendant.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff filed for benefits on January 16, 2002, alleging that she has been disabled and unable to work since October 25, 2000,[1] due to "right shoulder-tos [sic], right elbow, [and] the right ulnar nerve." (TR 47-49, 54). The Social Security Administration [SSA] denied benefits initially on June 6, 2002. (TR 28-32). A de novo hearing was held on February 11, 2004, before Administrative Law Judge [ALJ] Lubomyr M. Jachnycky. (TR 196-246). In a decision dated February 27, 2004, the ALJ found that Plaintiff could

---

[1]This is the date on the application, whereas Plaintiff's Disability Report states that she became unable to work on November 17, 2000. (TR 54). At the hearing, Plaintiff's representative and the ALJ discussed the onset date and agreed to apply the October 2000, onset date. (TR 225-26).

perform some light work. (TR 14-24). Accordingly, Plaintiff was found not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on July 28, 2004. (TR 5-7). Plaintiff has commenced this action for judicial review.

### A. PLAINTIFF'S TESTIMONY

Plaintiff was forty at the time of the hearing and on a disability policy that provided her with income through her previous employer, Chrysler. (TR 200). She stated that she gets two thousand dollars per month. (TR 200). She explained that she has been off work since October 2000, and since October 2001 she has been receiving the monthly check. (TR 200-01). She reported that earnings in 2001 were not from work; rather, they indicate amounts received from Signa. (TR 208-09). She stated that she believes the policy providing the monthly payments is indefinite, assuming that she does not get any better. (TR 201). She stated that she also receives child support. Id. She stated that she is not currently working. Id.

She testified that she was in production at Jeep when she stopped working in 2000. (TR 207). She stated that she worked wherever they needed her. Id. She stated that it was basically assembly work that required a lot of standing, and she was on her feet most of the time. (TR 207, 225). She stated that she did not have to lift too much because she was limited to lifting five to ten pounds. (TR 207-08). She also stated that her limitations included: "bilateral nothing over both [her] shoulders, no tugging and pulling, no air tools." (TR 208). She stated that she thought there were more restrictions, but could not recall. Id. She stated that while she was working, she got along with her coworkers and supervisors. (TR 225).

Plaintiff indicated that she stopped working because of weakness or lack of strength in her arms, her right arm more than the left. (TR 209). She explained that it is her right arm, not her shoulder, and that the left arm is just starting to hurt. Id. She stated that her "right arm was completely

numb." (TR 224). She explained that they have "detected the [ulnar] nerve in the left arm and then the cracking in the left shoulder," which is what lead to the overhead bilateral restrictions. (TR 209-10). She stated that she also suffers from migraines, which are being treated by Dr. Sanders. (TR 210). She explained that she sees him twice a year, but if she has problems, every three months. Id. She stated that she is on medication for her migraines. Id.

Additionally, she reported that she has osteoporosis, which limits her from staying in one position too long. (TR 211). She reported that she can only sit for twenty to thirty minutes at a time. Id. She stated that it also causes back pain and migraine headaches. Id. She stated that she is on nasal spray medication for the osteoporosis as it affects her back pain. Id.

Plaintiff reported that she has had decompression surgery for an ulnar nerve on the right back side in 1999. (TR 212). She stated the surgery relieved her pain, but the tingling is still there. (TR 212-13, 235). She reported subsequent thoracic outlet surgery in 2000, one month after she stopped working. (TR 212, 224-25). She did not get any better after the surgery, continued to have shoulder pain, and was unable to return to work. (TR 225, 236). Additionally, she had a third surgery on March 5, 2003, for an arthritic bone spur on her right shoulder. (TR 225). She stated that she is right handed. (TR 213).

Plaintiff reported that she has a driver's license and drives about two or three times a week for a total of six to eight hours a week. (TR 201-02). She stated that she has a handicapped sticker for her car. (TR 202). She testified that she graduated high school and is able to read and write. (TR 202-03). She stated that she reads mystery stories as well as newspapers and magazines for about ten minutes daily. (TR 203). She reported that she comprehends what she reads. Id.

On a typical day, Plaintiff gets up at six-thirty in the morning. Id. She has two children at home, ages nineteen and thirteen. (TR 203-04). She stated that she gets her children "off to school,"

3

then sits, and usually does laundry. (TR 204). She stated that she does the laundry the same way now that she used to do it before she was hurt. (TR 235). She stated that she then "start[s] cleaning because it takes [her] a lot longer to clean." (TR 204). She stated that she finishes cleaning in the afternoons. Id. She stated that she dusts and limits herself to vacuuming a couple times a week. (TR 205). She stated that she makes the beds, but not everyday and loads the dishwasher. Id. She reported that she grocery shops once a week. Id. She stated that she is able to take care of her personal hygiene and dress herself. (TR 204, 213). She stated that for the most part she is able to button her shirts and things of that nature. (TR 213). Later, she stated that she needs help with jewelry and small buttons. (TR 235). She stated that she cooks meals. (TR 204). Plaintiff reported that she smokes a pack of cigarettes a day and she never quit smoking, even after she had surgery. (TR 217-18).

Plaintiff testified that her husband works from three-thirty in the afternoon until two or three in the morning. (TR 205). She stated that he is with her at least part of the day. Id. She stated that she sits with him part of the day and watches television with her children in the evenings. (TR 206). She stated that she scrapbooks as a hobby. Id. She stated that on the weekends, she visits with her sixty-year-old mother for about six to eight hours. (TR 206-07). Plaintiff testified that she can stand for at least an hour at a time. (TR 214). She stated that she could probably walk one mile. (TR 215). She stated that she reported on a SSA form earlier that she could walk five miles, but her back is worse now than it was then. (TR 234). She stated that she can climb steps and stairs as long as she "watch[es] so [she doesn't] fall down," but nothing medically prevents her from traversing stairs. (TR 217). She stated that crawling and kneeling are difficult for her and she prefers squatting over bending to pick things up. Id.

Plaintiff's representative initiated a consultative exam with a psychologist, Edward Czarnecki, Ph.D. of disability services. (TR 213-14). Plaintiff reported seeing him once. (TR 214). She stated

4

that she has not treated with anyone else for psychiatric treatment, nor has she been referred for same. (TR 216). Further, she stated that she has never been hospitalized for mental problems or taken medication for same. (TR 216-17). She stated that Dr. Keesho is her orthopedic surgeon and he gave her the restrictions on lifting no more than ten pounds and no overhead use of the arms. (TR 215). She reported that Armando Vincente, M.D., is her vascular doctor that she sees for her thoracic outlet syndrome and he performed her surgery in 2000 to remove her rib. (TR 215-16).

      Plaintiff reported that her pain is a four to a six on a daily basis in her right shoulder, with ten being the most excruciating pain. (TR 218). She indicated that she does not have other pain on a daily basis; however, she reported that she does have migraines four times a month on average. (TR 218-19, 227). She stated that the shortest headache lasts four to six hours and the longest are up to four days. (TR 227). She stated before she takes her medication, her pain is at a four or a five, with ten being the most excruciating pain. (TR 228). She indicated if her medication worked, her headache would drop down to a two. (TR 229). However, sometimes her medication has not worked and her headaches have gone up to a nine. Id. The next morning if the medication did not work, she will wake up with a headache at about a six. Id. She stated that it is possible that she would have a headache once a month at a nine for two to five days, associated with her menses. (TR 230).

      Plaintiff explained that when her pain is at a four or a five due to her migraines, she just sits because she cannot function. (TR 230). She explained that she cannot function because the cervical region of her neck tightens up "to the point [she] can't even move [her] neck or [] head." (TR 230-31). She explained that this pain in her neck is what signals to her that a migraine is coming. (TR 231). She stated that the pressure in her neck lasts from two hours to a week. (TR 232). She explained that when her headaches last too long, she starts to do as little as she can because she has to care for her children. Id. She stated that she puts off the cleaning, laundry, and grocery shopping until the next

day when she has a migraine. (TR 233). She stated that her children cook for themselves on these days, or she cooks "something light, simple." Id.

Plaintiff reported that she does not have any side effects from her osteoporosis medication, Actonel; however, she has to take Zonegran for the shakes, which she has had for about one year. (TR 219, 221). She explained that she gets uncontrollable tremors in her hands and in her head. (TR 219-20). She stated that this occurs "a lot," but she does not notice them as much as other people. (TR 220). She stated that the tremors "come on," rather than occurring constantly. (TR 221). She stated that her grandmother suffered from tremors, too, but they have not been diagnosed as "congenital or familiar." Id. She stated that she takes two pills at night and they help control the symptoms. (TR 220-21). She stated that she does not have side effects from the medication. (TR 222).

Plaintiff testified that she takes one, maybe two Relpax tablets as needed for her migraines. Id. She stated that she is limited to taking two Relpax at one time. Id. She stated that the Relpax is a new medication. (TR 223). Before that, she reported taking another drug she could not recall and also indicated that she is allergic to Imitrex. Id. She stated that she did not have any side effects from the Relpax. (TR 224). She testified that she has not been to the emergency room in the last two years, but she has "come close" to going. (TR 222-23). She reported that she has not had a migraine with her new medication. (TR 227).

Plaintiff indicated that she takes Miacalcin, a nasal spray, for her bone pain that is associated with her osteoporosis. (TR 223). She stated that she did not have any side effects from the Miacalcin. (TR 224). She stated that she was using over-the-counter Motrin, but stopped using it because her blood was thinning. Id. Now she stated that she just takes her prescription medications. Id.

Plaintiff indicated that her social life has changed since she began having problems. (TR 236). She stated that she is not as outgoing as she used to be. Id. However, she stated that there has *not* been a change with the people close to her. Id. She noted that she is closer to them because she depends on them more. Id.

### B.     MEDICAL EVIDENCE

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

### C.     VOCATIONAL EXPERT'S TESTIMONY

Richard Szydlowski, a vocational expert [VE], testified at the hearing. (TR 237-45). He classified Plaintiff's past work as a motor vehicle assembler as unskilled and medium. (TR 238). The ALJ presented a hypothetical question to the VE in which

> a 41-year-old person with a high school education and past work experience as a driver and assembler in the automobile industry who's impaired by the following: she has a history of right thoracic outlet syndrome with residual bilateral upper extremity pain. She also has migraine headaches, she also has back and neck pain. She's also - - she also has osteoporosis. She also has a history of surgery for ulnar nerve. She's also been diagnosed with a somatoform disorder and major depression. In terms of her medications she's currently taking the following: she takes Actonel, Zonegran, Relpax, Miacalcin nasal spray. And these medications are listed on page 1 of Exhibit 6E, and she indicated that with respect to these medications, she does not suffer any significant adverse side effects. And she is further limited in the following respects: with respect to lifting/carrying, that would be limited to a maximum of 10 pounds only, and that only on an occasional basis. She can sit for approximately six hours out of an eight-hour day, and stand or walk for about six hours out of an eight hour day, but she would have to have a sit/stand option after approximately a half-hour. With respect to bending and stooping, she can do that only on an occasional basis. She can do no work involving crawling, crouching, or kneeling. Also she can do no work where she would have to reach above shoulder level. Also she could do no work involving climbing stairs. Also she could do no work where she would be

---

[2]See Subpart E, supra, beginning on page 9.

> in the vicinity of heights or moving machinery. With respect to her hands, she can do no power gripping or firm grasping with either of her upper extremities. Now I should note that she is right-handed and she can do simple grasping and fine manipulation. Also in terms of non-exertional limitations, she can have only minimal contacts with coworkers and supervisors and no contacts with the public. And lastly, in terms of the work that she can do, it would have to be limited to simple, routine, unskilled work.

(TR 240-41). The VE testified Plaintiff was not capable of her past work under these circumstances. (TR 241). The ALJ asked the VE whether there was other work in the regional economy that such a claimant could do. Id. The VE testified that there was a reduced range of light and sedentary and work that she could do. Id. At the light level the following exists: security monitor, 1,400 positions; assembler, 1,700 positions; and inspector/checker, 1,000 positions. (TR 241-42). The VE explained that the security monitor position required a person to be on their feet six of eight hours. (TR 242). At the unskilled and sedentary level, the following exists: clerical handler, 2,000 positions and assembler, 2,500 positions. (TR 243). The VE stated that clerical handling includes "jobs such as document preparers, collators, and packers such as envelope stuffers." Id. The assembly positions were described as basic bench assembly. Id. The VE stated that his response to the hypothetical was consistent with the Dictionary of Occupational Titles. Id.

The ALJ then asked the VE to take into consideration the non-exertional limitations that Dr. Edward Czarnecki described. Id. Specifically,

> [t]he disturbances across so many body systems and the interaction of emotional factors render the collective effects of the somatoform disorder and major depressive disorder quite severe. Consequently, she does not initiate, sustain, or complete activities of daily living. She is irritable, frustrated, and has very little social tolerance for social frustration. There are frequent disruptions in concentration, persistence, and pace, which make her functioning unreliable and inconsistent.

8

(TR 243-44). The VE testified that with these restrictions, she could not "meet the mental demands of competitive employment." (TR 244). Further, the VE stated that she could not do the jobs previously listed. Id.

Next, the ALJ asked the VE to consider the migraine headaches as testified to by Plaintiff. Id. Specifically, migraine headaches that occur "two to five days per month [that] sometimes [ ] reach the 9 level." Id. Regarding same, the VE stated that she could not perform the jobs listed in response to hypothetical number one, nor any other work. (TR 244-45). Plaintiff's representative declined to question the VE. Id.

### D.     ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff's "history of right thoracic outlet syndrome with residual bilateral upper extremity pain; migraine headaches; neck and back pain; osteoporosis; history of surgery for ulnar nerve; depression and somatoform disorder are considered 'severe,' " but that she does not have an impairment or combination of impairments set forth in Appendix 1, Subpart P, Regulations No. 4. (TR 22-23). The ALJ found Plaintiff's testimony not to be totally credible. (TR 20, 23). He determined that Plaintiff had the residual functional capacity [RFC] "to perform a significant range of light work." (TR 20, 23). Thus, the ALJ concluded that Plaintiff is not eligible for disability. (TR 24).

### E.     ANALYSIS

Plaintiff advances several claims in her Motion for Summary Judgment. Plaintiff's Motion for Summary Judgment argues that the ALJ's decision is not supported by substantial record evidence because: 1) the ALJ failed to properly assess the severity of her migraine headaches; 2) the ALJ improperly indicated that her headaches resulted from a failure to follow prescribed treatment;

and 3) the ALJ improperly rejected the opinion of the consulting psychologist.[3]  In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[4]  The matter is now ready for decision.

**1.    Standard of Review**

This Court's review of the ALJ's conclusions is limited.  The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g) (1997).  Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a scintilla of evidence, but less than a preponderance of evidence.  Brainard v. Secretary of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).  This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).  Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).  Applying these standards, I will analyze each of Plaintiff's claims.

**a.    Migraine Headaches**

Plaintiff argues that although the ALJ found Plaintiff's migraines to be "severe" and posed a related hypothetical to the VE,  he failed to address any limitations regarding same in his decision or

---

[3]Plaintiff's Motion for Summary Judgment filed May 6, 2005 (hereinafter "Plaintiff's Brief"), at pages 2-7.

[4]Defendant's Motion for Summary Judgment filed March 28, 2005 (hereinafter "Defendant's Brief"), at pages 11-18.

findings.[5]  Plaintiff then acknowledges that the ALJ mentioned the migraines in his decision, but argues that this is "boilerplate."[6] (TR 22).  The ALJ stated,

> I also asked the vocational expert a third hypothetical, about her "9" level migraines. He also indicated she can't work if this testimony is found credible.  At the hearing, she stated that she had not gone for any emergency room treatment in the past 2 years. The medical records, while they do corroborate that she gets migraine headaches, do not corroborate their severity or their duration, as indicated at the hearing.

Id.  Plaintiff argues that although the ALJ stated that her migraines improved with treatment and were under control in 1999 and 2002, (TR 19), he failed to discuss evidence of reoccurrence of the headaches.[7] (TR 105, 106, 169, 186).  An ALJ is not required to comment on each and every piece of evidence in the record.[8]  Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); Anderson v. Bowen, 868 F.2d 921, 924 (7th Cir.1989).

Further, Plaintiff does not allege what exact limitations would need to be included as restricted by her migraine headaches and does not challenge the ALJ's credibility finding.  It is important to keep in mind that

> the discretion [is] vested in the ALJ to weigh all the evidence. Myers v. Richardson, 471 F.2d 1265 (6th Cir.1972); Villarreal v. Secretary of Health and Human Services, 818 F.2d 461 (6th Cir.1987).  Moreover, we hold that "the court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987).

---

[5] Plaintiff's Brief at page 2.

[6] Plaintiff's Brief at page 2.

[7] Plaintiff's Brief at pages 2-3.

[8] Plaintiff mentions that the ALJ did not discuss her tremors.  Plaintiff's Brief at pages 3 and 5.  However, as Defendant points out, Plaintiff testified that she took a medication that was helping to  treat her tremors. (TR 219-20). Defendant's Brief at page 16, n. 6.

11

Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1227-1228 (6th Cir. 1988).  The ALJ found that her headaches were under control based on treatment notes (TR 19, 165, 186, 191), and her own testimony.[9] (TR 222-23, 227).  Therefore, the ALJ's discussion of Plaintiff's migraine headaches is supported by substantial evidence.

### b.      Failure to Follow Prescribed Treatment

Plaintiff alleges that the ALJ improperly found that her migraine headaches resulted from failure to follow a prescribed treatment and relies upon SSR 82-59.[10]  Social Security Ruling 82-59, available at 1982 WL 31384, *1, provides, in pertinent part, that

> SSA may make a determination that an individual has failed to follow prescribed treatment only where all of the following conditions exist:
> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) or, in the case of a disabled widow(er) that the impairment meets or equals the Listing of Impairments in Appendix 1 of Regulations No. 4, Subpart P; and
> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.
> Where SSA makes a determination of "failure," a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable.

The ALJ does not cite nor is there any indication that he based his findings on this Ruling.  Plaintiff alleges that the ALJ's statement that "[i]t appears the claimant obtained good relief of her symptoms when following her treatment regimen, " (TR 19), "[c]learly . . . is intended to indicate that

---

[9]Plaintiff testified that she is on a new medication for her migraines and has not had a headache since she began same.  (TR 227).

[10]Plaintiff's Brief at pages 3-6.

12

the claimant would have continued ro receive the relief alluded to in 1999 and 2002 but for her failure to comply with treatment."[11] Plaintiff's argument is without merit. The statement is anything but clear and the ALJ mentioned other evidence to indicate that Plaintiff's migraine headaches were not disabling. She told Dr. Czarnecki in 2003 that when her headaches "get really intense she does go to the emergency room for IM pain medication." (TR 165). The ALJ noted this in his decision, but found that it was immaterial due to her testimony that she has not been to the emergency room for her headaches anytime in the past two years. (TR 19, 22). Therefore, the evidence does not show that the ALJ found Plaintiff disabled based upon failure to follow treatment for her migraine headaches and Plaintiff's argument, and as stated by Defendant, is unfounded.[12]

Plaintiff also argues that the RFC relied on by the ALJ by a DDS physician fails to mention Plaintiff's migraines.[13] (TR 82-90). However, the ALJ did discuss Plaintiff's migraine headaches as previously mentioned and further, he did not blindly follow the RFC of the DDS physician.[14] He included limitations relating to her mental ability as well. These included, "[m]inimal contact with co-workers, supervisors and no contact with the public. Limited to simple, routine unskilled work." (TR 20). He also posed two hypotheticals mentioning the migraine headaches to the VE, as noted earlier,

---

[11]Plaintiff's Brief at page 3. Plaintiff relies, in part, on a report by Dr. Vincente in December 1999, that "[s]he has frequent headaches produced by spasm of her trapezius muscles." (TR 106). This is prior to the relevant time for determining disability. Plaintiff testified that she did not stop working until October 2000, her alleged onset date, and, thus, the evidence shows that she worked ten months with headaches. (TR 207). She stated that she stopped working "mainly because of [her] arms." (TR 209). It was only after additional questioning regarding other problems that she mentioned her migraine headaches. (TR 210).

[12]Defendant's Brief at page 17.

[13]Plaintiff's Brief at page 4.

[14]See Subpart E, subsection a., infra at pages 11-12.

13

specifically discussing her migraine headaches (TR 240, 244-45), and discussed same in his decision. (TR 22). Therefore, he did not err in reliance on the DDS physician's RFC findings.

### c.      Consulting Psychologist

Lastly, Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Czarnecki, a DDS consultant, who found, "frequent disruptions in concentration, persistence and pace which make her functioning unreliable and inconsistent."[15]  (TR 167).  He concludes that Plaintiff's limitations "are currently severe enough to preclude even simple unskilled work." Id.  The ALJ discussed Dr. Czarnecki's findings at length.  (TR 17-18, 19-20).  The ALJ concluded that the opinion was not entitled to deference and stated

> [a]t the hearing, the representative stated that he is the one who referred the claimant to the psychologist. The claimant stated that none of her treating physicians has ever referred her for psychological evaluation. She also stated she has never had any history of psychiatric treatment or taking psychotropic medications. The claimant also stated that she saw Dr. Czarnecki only once. She never developed a treating physician relationship with him.

(TR 19). The ALJ discussed 20 C.F.R. § 404.1527, as noted by Plaintiff,[16] that he must consider the opinion of Dr. Czarnecki and explain the weight given to it. (TR 19). This is exactly what the ALJ did in fact. Further, none of Plaintiff's treating physicians opined that she was completely disabled. "It is a principle of disability benefit law that the opinion of a treating physician is entitled to greater weight than that of a physician who treats a claimant only once or only reviews the claimants records." Loy v. Sec'y of Health and Human Serv., 901 F.2d 1306, 1308 (6th Cir.1990) (citation omitted). See also 20 C.F.R. § 404.1527(d)(2).

---

[15] Plaintiff's Brief at page 7.

[16] Plaintiff's Brief at page 7.

**III.     CONCLUSION**

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **DENY** Plaintiff's Motion for Summary judgment, **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

**IV.     REVIEW**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

                                                s/Wallace Capel, Jr.
                                                **WALLACE CAPEL, JR.**
                                                **UNITED STATES MAGISTRATE JUDGE**

**Dated:**   August 24, 2005

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

### CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2005, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

James M. Dolenga, and James Brunson,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

                                         s/James P. Peltier
                                         United States District Court
                                         Flint, Michigan 48502
                                         810-341-7850
                                         E-mail: pete_peltier@mied.uscourts.gov